IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COLETTE HERRICK, JULIENE ATWOOD, and TEESHA MITCHELL,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>POTANDON PRODUCE, LLC, a limited liability company, KENT M. ROMRELL, DICK THOMAS, JAMEY HIGHAM, TRAVIS HESS, MEL DAVENPORT, STEVE OTTUM and J.P. SURERUS,<br><br>　　　　　Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION<br><br><br>Case No. 4:15-CV-00533-TS<br><br>District Judge Ted Stewart |

　　　　This matter is before the Court on Defendant Potandon Produce, LLC's ("Potandon") Motion for a Preliminary Injunction. For the reasons discussed below, the Court will deny Potandon's Motion.

I.  BACKGROUND

　　　　Potandon is a potato and onion broker located in Idaho Falls, Idaho. The company markets fresh potatoes and onions from local and regional producers to retailers, wholesalers, and restaurants. Former employees, Colette Herrick, Juliene Atwood, and Teesha Mitchell, brought claims against Potandon for violation of the Equal Pay Act ("EPA") and the Fair Labor Standards Act ("FLSA"). In their Complaint, these three women allege Potandon violated the EPA when it paid them less than men in their department for doing the same or substantially similar work.[1] The women also allege that, in violation of the FLSA, they were not paid

---

[1] Docket No. 1, at 3–6.

1

overtime compensation when they worked more than 40 hours per week.[2]  Herrick started at Potandon in 1990 and worked in various capacities until she resigned in July 2015.  Before her resignation, she held the position of Sales Person for approximately twelve years.[3]  She started working for Eagle Eye Produce ("Eagle Eye") on August 3, 2015, as a Packaging and Transportation Clerk.  Eagle Eye is a produce broker in Idaho Falls, Idaho that markets potatoes, onion, Nogales vegetables, watermelons, and table grapes grown in ten different states and three different countries.[4]  With its Answer to her Complaint, Potandon filed a Counterclaim against Herrick for violation of a non-compete agreement (the "Agreement") that she signed while employed at Potandon.[5]  Potandon alleges that Herrick is in violation of the Agreement and seeks injunctive relief,[6] and additional damages for breach of contract, breach of the covenant of good faith and fair dealing, and misappropriation of trade secrets.[7]  At issue in this Motion is only the requested injunctive relief.

On August 11, 2015, Potandon sent a letter to Herrick and Eagle Eye notifying them that it expected Herrick to honor the Agreement.[8]  Herrick indicated her intent to honor the Agreement and told Potandon that she would not work in a position for Eagle Eye that violated the Agreement.[9]  During September and October of 2015, Herrick and Potandon attempted to

---

[2] *Id.* at 7.

[3] Docket No. 21-2, at 1.

[4] Docket No. 10-3, at 18.

[5] Docket No. 5, at 9–13.

[6] *Id.* at 14.

[7] *Id.* at 16–19.

[8] *Id.* at 13.

[9] *Id.*

resolve their issues over back pay and the Agreement.[10] These discussions were unsuccessful, and Herrick filed suit on November 11, 2015.[11] She is still employed at Eagle Eye and contends that the work she does there does not violate the Agreement because it has nothing to do with sales.[12] Potandon disagrees and is seeking a preliminary injunction barring Herrick from working at Eagle Eye in her current position or any other position that, in its opinion, violates the Agreement.

> The Agreement states that:
>
> [F]or a period of eighteen (18) months following the termination of such employment (for any reason, whether voluntary or involuntary), Employee shall not, directly or indirectly, in any location in the United States in which Potandon conducts business and in which Employee provided services or had a significant presence or influence during her employment, engage, become interested in (as a greater than 10% owner, or stockholder, partner, director, officer, member, creditor), or act as an employee, contractor, or consultant, <u>in any role involving the provision of similar (not identical) services</u>, for a business purchasing, selling/supplying, or handling fresh potatoes or onions, or related services in competition with Potandon's Business.
> * * *
> During Employee's employment at Potandon and for a period of eighteen (18) months after the termination of that employment (for any reason, whether voluntary or involuntary), Employee shall not, with respect to any business in competition with Potandon's Business, for herself or on behalf of any person or entity, directly or indirectly:
>
> 4.1   Attempt, assist, or actually solicit, divert, take away, or advertise to any customer, co-packer, or other supplier of Potandon or a Potandon affiliate, for whom Employee performed services, or with whom Employee developed a relationship, while working on behalf of Potandon or a Potandon affiliate during her employment with Potandon.
>
> 4.2   Recommend to any customer, co-packer, or supplier of Potandon or its affiliates any business purchasing, selling, or handling fresh potatoes or onions other than Potandon and its affilates and their respective employees.[13]

---

[10] *Id.*

[11] *See* Docket No. 1.

[12] Docket No. 16-1, at 3.

[13] Docket No. 10-3, at 7 (emphasis added).

## II.  DISCUSSION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[14]

### A.  LIKELIHOOD OF SUCCESS ON THE MERITS

In this case, the Court considers two questions to determine likelihood of success on the merits: (1) whether the agreement Herrick signed is enforceable, and if so, (2) whether Herrick has violated it.  Historically, Idaho law has disfavored the enforcement of non-compete agreements in the employment context.  "Covenants not to compete in an employment contract are disfavored and will be strictly construed against the employer."[15]  However, in 2008, the Idaho legislature passed legislation that declared enforceable such agreements that were made by an employer with a "key employee" as long as the agreement is "reasonable as to its duration, geographical area, type of employment or line of business, and does not impose a greater restraint than is reasonably necessary to protect the employer's legitimate business interests."[16] The legislature further instructed an examining court that if it found an agreement "unreasonable in any respect . . . [to] limit or modify the agreement or covenant . . . [to] render it reasonable . . . and specifically enforce the agreement as limited or modified."[17]

For the purposes of this Motion, Herrick does not dispute the enforceability of the Agreement.  She only argues that her current employment at Eagle Eye does not violate it.

---

[14] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).

[15] *Pinnacle Performance, Inc. v. Hessing*, 17 P.3d 308, 311 (Idaho Ct. App. 2001).

[16] Idaho Code Ann. § 44–2701.

[17] *Id.* § 44–2703.

Potandon argues that Herrick's failure to argue the enforceability of the Agreement is dispositive to its argument of likelihood of success on the merits. "Since the Agreement is enforceable, there is a likelihood of success on the merits."[18] This is not correct. As mentioned above, in order for Potandon to succeed on the merits of its contract claim, it must prove not only that the Agreement was valid and enforceable, but that it was actually breached.

Based on the limited evidence presented by Potandon, the Court finds that Potandon has not shown that it is likely to succeed on the merits of its claim for breach of the Agreement. As evidence that Herrick has breached the Agreement, Potandon submits three affidavits with attachments. The attachments include three emails about holiday conference calls with Walmart, one email from a Walmart replenishment manager, and an online trade magazine article. The three emails are group emails sent to inform produce vendors of weekly conference calls that Walmart would hold during the holiday season to make sure it stayed apprised of any potential "concerns with availability, quality or late deliveries." Potandon's sales person responsible for selling to Walmart was included on this group email, as was Herrick and two other employees of Eagle Eye, including Lance Poole, one of Eagle Eye's owners.[19] Herrick admits participating in these conference calls, but contends that they had nothing to do with selling, only ensuring timely delivery of produce that already had been sold.[20] Herrick was also not involved in sales to Walmart during her employment at Potandon.[21] The Court finds that participation in these calls is not sufficient evidence that Herrick violated the Agreement.

---

[18] Docket No. 19, at 2.

[19] Docket No.10-2, at 5–7, 9–10.

[20] Docket No. 16-1, at 3.

[21] *Id.*

The other email from Walmart, addressed to Herrick and a handful of other individuals at other produce companies, asks about the availability of particular varieties of potatoes. The Walmart manager states, "I am in the process of looking at inventory for PTO RED 10#, 5#, Bulk, Micro Bag Red and PTO Yellow 5# and Micro Bag Yellow. I would greatly appreciate your recommendations. I want to make sure that we don't have any product gap or instock issues."[22] On its face, this email is ambiguous. The email could be requesting advice on what types of produce will be available in the future based on current supply, or it could be requesting a quote for the listed products. Without evidence of the context of this email and how Herrick responded, the Court also finds that it is also not compelling evidence that Herrick violated the Agreement.

Finally, the article from the online trade magazine is about the accidental death of a produce buyer. The article states that Herrick is a current packaging coordinator at Eagle Eye. Herrick is quoted as saying that her "heart just broke [hearing about the accident]," and that she had met the buyer "while she worked at Potandon Produce, LLC."[23] The Court finds that the fact, taken alone, that she created relationships with produce buyers during her tenure at Potandon does not prove that she is currently exploiting those contacts to the advantage of Eagle Eye.

Herrick points out that her current job title says nothing about sales. Potandon argues that Herrick's job title is not dispositive as to whether or not she is violating the Agreement. This is true. However, Potandon goes further to argue that she is prohibited by the Agreement from not only activities directly related to selling produce, but also from any activity that is similar to any activity that she did as a sales person for Potandon. This is an unsupportable

---

[22] Docket No. 10-2, at 8.

[23] Docket No. 10-3, at 14.

position because, according to the Idaho statute, the Agreement, either as written or as subsequently modified by the Court, cannot "impose a greater restraint than is reasonably necessary to protect the employer's legitimate business interests."[24]  For the purpose of this Motion alone and for the reasons stated above, the Court finds that Potandon is unlikely to succeed on the merits of its claim.

B.  IRREPARABLE HARM

"'The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'"[25]  Even if the Court were to assume, for the sake of argument, that Potandon is likely to succeed on the merits of its contract claims, it cannot show that it is likely to suffer irreparable harm if Herrick continues to work for Eagle Eye as a Packaging and Transportation Clerk.  "'Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'"[26]  Potandon has made no such showing other than to speculate that Herrick will "misappropriate Potandon's goodwill for her own benefit[,] . . . reduce or take away the goodwill Potandon has developed over the years . . . [and] disclose confidential information"[27] if allowed to continue to work for Eagle Eye.  Potandon provides no evidence for these bald assertions.  Even if Potandon had provided evidence that it was losing money because Herrick was diverting customers from Potandon, misappropriating its goodwill, and disclosing confidential

---

[24] Idaho Code Ann. § 44–2701.

[25] *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959)).

[26] *Am. Trucking Assocs. v. City of L. A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 22).

[27] Docket No. 10-1, at 11.

information, it may not be enough to prove irreparable harm because, as Potandon concedes, "economic losses alone will not support a finding of irreparable harm."[28] It is well established that "[p]urely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation."[29]

Potandon argues that, under Idaho law, intangible injuries such as a loss of goodwill alone qualify as irreparable harm. This argument fails for two reasons. First, the two cases that Potandon uses to support its argument both involve non-compete agreements that were signed incidental to the sale of a business. Idaho courts have long held that non-competes are construed more liberally in the context of the sale of a business than in the employment context. "'[R]estrictive covenants in contracts limiting an employee's natural right to pursue an occupation and thus support himself and his family will be strictly scrutinized,' but courts are less strict in construing the reasonableness of such covenants ancillary to the sale of a business."[30] Second, Potandon provides no specific evidence, only conclusory statements, of potential lost goodwill, disclosure of confidential information, and other intangible harms stemming from Herrick's employment at Eagle Eye. Potandon's speculations that —"[i]f Herrick is allowed to continue her course, it is not only likely, but a near certainty Potandon will suffer irreparable harm,"[31] and that "it is a virtual certainty that Herrick will disclose confidential information"[32]—do not, without evidence, establish a likelihood of irreparable harm.

---

[28] *Id.*

[29] *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015).

[30] *Bybee v. Isaac*, 178 P.3d 616, 621 (Idaho 2008).

[31] Docket No. 10-1, at 10.

[32] *Id.* at 11.

Finally, Potandon has known about Herrick's employment with Eagle Eye since August 2015, and did not file a motion for a preliminary injunction until after Herrick filed her suit in November 2015. This delay cuts against Potandon's argument for irreparable harm. The Ninth Circuit has noted that a "[p]laintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm,"[33] and in such cases, the length of time for delay "need not be great."[34] In *Garcia v. Google*, the Ninth Circuit held that the district court did not abuse its discretion in finding that the plaintiff's delay of a few months in seeking an injunction undercut her claim of irreparable harm.[35] Here, Potandon also waited several months before attempting to enjoin Herrick from working at Eagle Eye. In summary, for the reasons stated above, Potandon has not established a likelihood of irreparable harm.

C. BALANCE OF THE EQUITIES

The Court finds that the balance of the equities also tips in Herrick's favor. If the injunction is granted, Herrick will not be able to do her job at Eagle Eye. Potandon argues that this not a hardship as she is free to engage in any "non-sales role within the produce industry."[36] However, this statement runs counter to Potandon's argument that her current job as a Packaging and Transportation Clerk violates the Agreement. Should Potandon's broad interpretation of the Agreement prevail, Herrick would likely be precluded from doing many non-sales related jobs in the produce industry. Restricting so many opportunities for her to make a living would be a great hardship on Herrick. Potandon, on the other hand, has provided no evidence of any harm,

---

[33] *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (quoting *Oakland Tribune, Inc. v. Chronicle Publi'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)).

[34] *Id.* (internal quotation marks omitted).

[35] *Id.*

[36] Docket No. 10-1, at 13.

intangible or economic, that would show Herrick's current employment creates a hardship which tips the balance of the equities in Potandon's favor.

D.  PUBLIC INTEREST

The Court finds that the public interest tips in favor of Potandon because of Idaho's legislation favoring enforcement of employee non-compete agreements in certain circumstances. The Ninth Circuit has held that, for the purposes of a preliminary injunction,"[t]he public interest may be declared in the form of a statute."[37]  However, this alone does not compensate for the failure to meet the three other factors.

### III.  CONCLUSION

It is therefore

ORDERED that Defendant Potandon's Motion for a Preliminary Injunction (Docket No. 10) is DENIED.  It is further

ORDERED that the parties submit a stipulated scheduling order to utdecf_stewart@utd.uscourts.gov for the Court's signature within 14 days.

DATED February 26th, 2016.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[37] *Golden Gate Rest. Ass'n v. City and Cty. of S.F.*, 512 F.3d 1112, 1127 (9th Cir. 2008).