IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COLLETTE HERRICK, JULIENE ATWOOD, TEESHA MITCHELL, and SHEREE JONES,<br><br>Plaintiffs,<br><br>v.<br><br>POTANDON PRODUCE, LLC, a limited liability company, KENT M. ROMRELL, DICK THOMAS, JAMEY HIGHAM, TRAVIS HESS, MEL DAVENPORT, STEVE OTTUM, J.P. SURERUS, and JACK KELLEY, individuals,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S SECOND MOTION FOR PRELIMINARY INJUNCTION<br><br><br>Case No. 4:15-CV-533 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Potandon's Second Motion for Preliminary Injunction. The Court will deny Potandon's Motion for the reasons stated below.

I.  BACKGROUND

Potandon Produce, LLC ("Potandon") is a potato and onion broker located in Idaho Falls, Idaho. Former employees Colette Herrick, Juliene Atwood, and Teesha Mitchell brought claims against Potandon for violation of the Equal Pay Act ("EPA") and the Fair Labor Standards Act ("FLSA"). In its Answer to the Complaint, Potandon filed a Counterclaim against Ms. Herrick for violation of a non-compete and confidentiality agreement (the "Agreement") that she signed while employed at Potandon. Potandon sought injunctive relief and filed a motion for preliminary injunction. The Court denied this motion on February 26, 2016. The Court found that (1) Potandon had not shown a likelihood of success on the merits for its claim for breach of

1

the Agreement, (2) Potandon had not shown that it is likely to suffer irreparable harm if Ms. Herrick continued her employment at Eagle Eye as a Packaging and Transportation clerk, (3) the balance of equities tipped in Ms. Herrick's favor, and (4) although the public interest tipped in favor of Potandon, that fact alone did "not compensate for the failure to meet the three other factors."[1]

Potandon now submits a Second Motion for Preliminary Injunction seeking to enjoin Ms. Herrick from "engaging in any act which would be a violation of the Non-Compete and Confidentiality Agreement," including disclosing confidential information to a third party, retaining any documents, confidential information, or intellectual property of Potandon, and engaging in employment identical or similar to her role as a Potandon employee.[2] Potandon relies on two recent developments in support of its renewed motion for injunctive relief: (1) newly discovered evidence submitted to Potandon by Ms. Herrick as part of her interrogatory responses and (2) a recent amendment to Idaho Code § 44-2704.

## II. DISCUSSION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[3]

First, Plaintiff must show a likelihood of success on the merits of its claim for breach of the Agreement. In its Second Motion, Potandon asserts that it has obtained new evidence in support of its allegation that Ms. Herrick has breached the Agreement. Potandon argues that (1)

---

[1] Docket No. 22, at 10.

[2] Docket 36, at 2.

[3] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Ms. Herrick's job title at Eagle Eye is irrelevant to determining whether she has breached the Agreement and that her work in transportation and packaging for Eagle Eye is identical to that which she performed as a Potandon Sales Person, (2) Ms. Herrick contacted Potandon customers during her employment with Eagle Eye in violation of the Agreement, and (3) Ms. Herrick improperly retained and deleted Potandon's confidential information.

To some extent, Potandon reasserts its previous arguments. Potandon argued in its previous motion for preliminary injunction that Ms. Herrick engaged in activities similar to those she performed for Potandon for Eagle Eye and that Ms. Herrick's job title is not dispositive as to whether she is violating the Agreement. Potandon cited to instances in which Ms. Herrick, while employed at Eagle Eye, participated in conference calls to ensure timely delivery of produce that had already been sold. The Court held that prohibiting any activity that is similar to any activity she engaged in as a sales person for Potandon is an unreasonable restraint in an attempt to protect an employer's legitimate business interest.[4]

Potandon now argues that Ms. Herrick engaged in identical duties to that which she performed at Potandon. Specifically, Potandon alleges that Ms. Herrick engaged in "activities related to packaging or transporting product,"[5] which are identical to her duties "related to the transportation of sales orders and resolving carrier and supplier issues."[6] Potandon does not provide specific examples, but rather compares Potandon's Job Description[7] with Eagle Eye's

---

[4] Docket No. 22, at 7.

[5] Docket No. 36-1, at 8.

[6] *Id*. at 7.

[7] Docket No. 36-4, at 5.

offer letter,[8] which lists some, but not all of the responsibilities of a "Packaging Coordinator." As Potandon recognizes, job titles or descriptions are not dispositive as to whether a breach or violation of the Agreement has been committed.  Even had Ms. Herrick engaged in activities related to the transportation of sales orders at Potandon in her role as a sales representative, those duties were, as Ms. Herrick attests, incidental to the primary responsibility of customer service and sales.  As the Court previously held, broadly prohibiting Ms. Herrick from engaging in any duties she once engaged in is an unreasonable restriction on her rights.

Next, Potandon argues that Ms. Herrick breached the Agreement by contacting Potandon customers.  Potandon submits two text messages and a Facebook post in which Ms. Herrick interacted with Potandon's customers.  In the first text message to the buyer of a top Potandon customer, Ms. Herrick asks for the buyer's email address.  The buyer asked about the pending litigation regarding the non-compete matter.  Ms. Herrick states that she's had to hire an attorney and that "[it's] like David and goliath."  The buyer then responds, "Bastards!!!  Sorry to hear it.  Do you have all your pots ready for the winter?"

In the second text message, Ms. Herrick tells a different buyer, "I just couldn't take it anymore!  I really appreciate our business and friend relationships!  You guys are awesome people!"  The buyer responds, "Likewise Collette it's been a pleasure.  I wish you had it better there.  You deserve it."

---

[8] Docket No. 36-2, at 9.

Last, Potandon submits a screenshot of Ms. Herrick's Facebook post in which she shared Lou Brutus's[9] post and tagged a partner and executive of another Potandon customer in the post. Ms. Herrick commented, "thought of you immediately!! xoxo."

These interactions fall short of suggesting breach of the Agreement. Section 4 of the Agreement prohibits solicitation of Potandon customers, but makes no mention of prohibiting all contact. Section 4 states,

> During Employee's employment at Potandon and for a period of eighteen (18) months after the termination of that employment (for any reason, whether voluntary or involuntary), Employee shall not, with respect to any business in competition with Potandon's Business, for herself or on behalf of any person or entity, directly or indirectly:
>
> 4.1   Attempt, assist or actually solicit, divert, take away, or advertise to any customer, co-packer, or other supplier of Potandon or a Potandon affiliate, for whom Employee performed services, or with whom Employee developed a relationship, while working on behalf of Potandon or a Potandon affiliate during her employment with Potandon.
>
> . . . .

Ms. Herrick's text messages and Facebook post with Potandon's customers did not amount to solicitation. There was no discussion of the sale of fresh potatoes or onions. Though Ms. Herrick requested the email of a Potandon customer, the Court cannot assume that the request was for the purpose of solicitation without further information. The Facebook post is devoid of any reference to business activity. Thus, Ms. Herrick's communications do not suggest breach of the Agreement.

Finally, Potandon argues that Ms. Herrick breached the Agreement by retaining confidential documents following termination of her employment. Potandon submits documents

---

[9] A radio personality.

that appear to be customer lists and sales information, which Ms. Herrick turned over to Potandon during discovery.[10]

Section 5.3 of the Agreement states,

> All Confidential Information provided to Employee, and all documents and Confidential Information prepared by Employee in the course of Employee's employment, including, but not necessarily limited to, . . . financial plans and information, business plans, customer lists, and other documents . . . and any and all copies thereof, are the exclusive property of Potandon and shall be returned immediately to Potandon upon termination of Employee's employment or upon Potandon's request at any time.[11]

Ms. Herrick had in her possession what appears to be confidential information as defined by Section 5.3 of the Agreement. However, this section does not relate to the non-compete portion of the Agreement and has no bearing on the question of whether Ms. Herrick should be enjoined from employment at Eagle Eye. Accordingly, Potandon fails to demonstrate its likelihood of success on the merits of its claim for breach of the Agreement and the Court need not reach the other factors of a preliminary injunction. Because of this, the Court need not discuss the effect of the amendment to Idaho Code § 44-2704, as that provision requires a showing of a breach, which Potandon has failed to do.

---

[10] Docket No. 40.

[11] Docket No. 10-3, at 7.

It is therefore

ORDERED that Defendant Potandon's Second Motion for Preliminary Injunction (Docket No. 36) is DENIED.

DATED this 17th day of November, 2016.

BY THE COURT:

_____
Ted Stewart
United States District Judge